# EXHIBIT A

23STCV04170

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ABBVIE INC. AND DOES 1 THROUGH 25, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MIRIAM ROBINSON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse<br>111 North Hill Street<br>Los Angeles CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>23STCV04170 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Catherine Coble, Gunn Coble LLP
3555 Casitas Ave. Los Angeles CA 90039      (818) 900-0695

| DATE: 02/27/2023<br>*(Fecha)* | David W. Slayton, Executive Officer/Clerk of Court | Clerk, by<br>*(Secretario)* | S. Bolden | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* AbbVie, Inc.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

23STCV04170

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Kevin Brazile

1  BETH GUNN, CA Bar No. 218889
   beth@gunncoble.com
2  CATHERINE J. COBLE, CA Bar No. 223461
   cathy@gunncoble.com
3  GUNN COBLE LLP
   3555 Casitas Ave.
4  Los Angeles, CA 90039
   Telephone:    818.900.0695
5  Facsimile:    818.900.0723

6  Attorneys for Plaintiff
   MIRIAM ROBINSON
7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               FOR THE COUNTY OF LOS ANGELES

10 MIRIAM ROBINSON                    Case No.  23STCV04170

11        Plaintiff,                  COMPLAINT FOR DAMAGES

12    vs.                             1. DISCRIMINATION ON THE BASIS
                                         OF RACE/NATIONAL
13 ABBVIE INC. AND DOES 1 THROUGH 25,    ORIGIN/ANCESTRY IN VIOLATION
   INCLUSIVE,                            OF THE FEHA
14                                    2. HARASSMENT ON THE BASIS OF
15        Defendants                     RACE/NATIONAL
                                         ORIGIN/ANCESTRY IN VIOLATION
16                                       OF THE FEHA
                                      3. DISCRIMINATION ON THE BASIS
17                                       OF DISABILITY
18                                    4. HARASSMENT ON THE BASIS OF
                                         DISABILITY
19                                    5. RETALIATION FOR OPPOSING
20                                       PRACTICES FORBIDDEN BY THE
                                         FEHA;
21                                    6. FAILURE TO PREVENT,
22                                       INVESTIGATE, AND REMEDY
                                         DISCRIMINATION, HARASSMENT
23                                       OR RETALIATION IN VIOLATION
                                         OF THE FEHA;
24                                    7. WHISTLEBLOWER RETALIATION
25                                       IN VIOLATION OF LABOR CODE §
                                         1102.5;
26                                    8. INTENTIONAL INFLICTION OF
                                         EMOTIONAL DISTRESS;
27                                    9. NEGLIGENT INFLICTION OF
                                         EMOTIONAL DISTRESS;
28

                                1

                    COMPLAINT FOR DAMAGES

**10. VIOLATION OF CALIFORNIA
EQUAL PAY ACT, LABOR CODE §
1197.5;**
**11. WRONGFUL TERMINATION IN
VIOLATION OF PUBLIC POLICY**

**DEMAND FOR JURY TRIAL**

Plaintiff MIRIAM ROBINSON (hereinafter "PLAINTIFF") brings this action against ABBVIE INC. ("ABBVIE"), and Does 1 through 25 ("DOES"), inclusive, (ABBVIE and DOES are hereinafter collectively referred to as "DEFENDANTS").  PLAINTIFF complains and alleges as follows based on personal knowledge and/or information and belief.

## JURISDICTION AND VENUE

1.      The Superior Court of the State of California has jurisdiction over this action pursuant to California Constitution Article VI, section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts."

2.      The Superior Court of the State of California has jurisdiction in this matter because PLAINTIFF is a resident of the State of California.  Moreover, upon information and belief, the alleged discriminatory acts and wrongful termination occurred in California, significant relief is being sought against DEFENDANTS whose violations of California employment laws form a significant basis for PLAINTIFF'S claims.  Further, no federal question is at issue because the claims are based solely on California law and at least one Defendant is a resident of, and/or regularly conducts business in the State of California.

3.      Venue is proper in this judicial district and the County of Los Angeles, California because PLAINTIFF performed work for DEFENDANTS in the County of Los Angeles, DEFENDANTS maintain offices and facilities and transact business in the County of Los Angeles, and DEFENDANTS' illegal acts, which are the subject of this action, occurred in the County of Los Angeles.  Thus, the County of Los Angeles is the county where the unlawful employment practices are alleged to have been committed pursuant to California Gov't Code section 12965(b) and where

1  a substantial portion of the transactions and occurrences related to this action occurred pursuant to
2  California Code of Civil Procedure section 395.

3         4.      Prior to filing this action, PLAINTIFF timely exhausted her administrative remedies,
4  by timely filing an administrative complaint with the Civil Rights Department ("CRD") (formerly
5  the Department of Fair Employment and Housing) and received a CRD right to sue letter on February
6  24, 2023.

7  **PARTIES**

8         5.      PLAINTIFF is an individual who is a resident of Los Angeles, California and at all
9  times herein mentioned was a resident of Los Angeles County, California.

10        6.      ABBVIE is, and at all times mentioned in this Complaint was, authorized to conduct
11 and conducting business in Los Angeles County, California.

12        7.      At all times relevant herein, PLAINTIFF was employed by DEFENDANTS within
13 the meaning of the California Fair Employment and Housing Act ("FEHA"), California Government
14 Code section 12900, *et seq.* *See* Cal. Gov't Code § 12962(d). PLAINTIFF worked for ABBVIE in
15 Los Angeles County, California, including by representing its products to prominent Los Angeles
16 County health care facilities. Accordingly, this lawsuit is properly venued in the Los Angeles County
17 Superior Court pursuant to California Government Code section 12965(b) and California Code of
18 Civil Procedure section 395.

19        8.      The true names and capacities of DOES are unknown to PLAINTIFF at this time, and
20 PLAINTIFF, therefore, sues such DOE Defendants under fictitious names. PLAINTIFF is informed
21 and believes, and thereon alleges, that each Defendant designated as a DOE is in some manner highly
22 responsible for the occurrences alleged herein, and that PLAINTIFF'S injuries and damages, as
23 alleged herein, were proximately caused by the conduct of such DOE Defendants. PLAINTIFF will
24 seek to amend this complaint to allege the true names and capacities of such DOE Defendants when
25 ascertained.

26        9.      PLAINTIFF is informed and believes, and thereon alleges, that each and every one
27 of the acts and omissions alleged herein were performed by, and/or attributable to, all
28

3

DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of, each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

10. PLAINTIFF is informed and believes, and based thereon alleges, that each DEFENDANT acted in all respects pertinent to this action as the agent of the other DEFENDANTS, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each DEFENDANT are legally attributable to the other DEFENDANTS.

11. As a direct and proximate result of the unlawful actions of DEFENDANTS, PLAINTIFF has suffered, and continues to suffer, from loss of earnings in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Overview of Plaintiff's Employment*

12. ABBVIE, is a publicly-traded biopharmaceutical company, known for its best-selling products Humira and Botox. ABBVIE purports to value diversity and inclusion, claiming on its website that "[w]e treat everyone equally, with dignity and respect. Around the world, our employees embrace diverse backgrounds and perspectives which allows us all to achieve our best." In its 2022 Form 10-K annual report it asserted that "AbbVie continuously cultivates and enhances its working culture and embraces equality, diversity and inclusion as fundamental to the company's mission."

13. PLAINTIFF was hired by ABBVIE as a pharmaceutical sales representative in or about February 2008. At all relevant times, PLAINTIFF performed exemplary work for ABBVIE, was consistently a top performer in her region in sales, receiving the Pinnacle Award (#1 nationally) and opening previously closed doors at clients UCLA, USC, Cedars Sinai, and other prominent Los Angeles County healthcare facilities to ABBVIE's products, convincing the facilities to add ABBVIE's products to their prescription drug formulary. However, due to ABBVIE's discriminatory, harassing and retaliatory work environment, PLAINTIFF did not receive promotions or pay commensurate with her excellent work and which ABBVIE awarded to her similarly situated and often less qualified or underperforming White peers.

4

*Plaintiff's Protected Status and Activity*

14.     PLAINTIFF is a Black female, and sought a leave of absence in connection with a disability and/or medical condition that limited her ability to work. PLAINTIFF therefore was a member of a protected class and entitled to the FEHA's guarantees of full and equal access to employment.  Cal. Gov't Code §§ 12940, *et seq.*

15.     During the course of her employment, PLAINTIFF engaged in protected activity when she opposed discrimination, harassment, and retaliation against her, as well as other unlawful activity by DEFENDANTS involving others. Thus, PLAINTIFF is also a protected employee under the FEHA and the California Labor Code ("Labor Code"). *See* Cal. Lab. Code § 1102.5.

16.     From the time PLAINTIFF began working for ABBVIE in or about February 2008, she was one of its few Black employees, as ABBVIE employed only 331 Black employees out of the 6,700-employees it employed in the United States – less than 5% of its workforce. PLAINTIFF worked diligently and consistently ranked as a top sales representative in her region.

17.     Initially, PLAINTIFF believed she had a positive trajectory for advancement at ABBVIE, but it later became clear that despite her objectively significant and superior contributions, she was being denied meaningful raises and promotions, while her White colleagues received promotions and raises.

18.     In 2019, following increased national attention to police brutality and racially motivated violence against Black citizens, including educational efforts by the Black Lives Matter movement, ABBVIE announced it would be directing more resources to its Black Business Network ("BBN"), a business leader group for ABBVIE Black employees. PLAINTIFF became extremely involved in the BBN, working on two documentaries for BBN's Cultural Competence Series regarding Black history, "The Fifth Girl: A Story of Survival" and "Black Wall Street." In 2019, PLAINTIFF served as the West Region Chair for BBN and in 2022 she served on its National Board.

19.     In 2019, PLAINTIFF engaged in a grueling interview process for two and a half months for an internal promotion to become a Regional Account Executive, which she eventually

5

COMPLAINT FOR DAMAGES

1   received. In a subsequent conversation with a customer, in which the customer shared a belief that

2   ABBVIE acted discriminatorily based on race, PLAINTIFF learned that her White male colleague,

3   who interviewed for the same position shortly thereafter, was promoted with ease, having

4   interviewed for just one week. At that point, PLAINTIFF was a manager for ABBVIE, in a prominent

5   role for ABBVIE's Immunology Department, which at the time produced the world's number one

6   selling drug, Humira. PLAINTIFF'S predecessor in the role was a White woman. There was very

7   little diversity in PLAINTIFF'S new department. PLAINTIFF was now one of a handful of Black

8   ABBVIE employees who worked in-house as opposed to in the field. Plaintiff did not have any direct

9   reports in her new position.

10          20.      PLAINTIFF excelled in her new position, working diligently to place ABBVIE

11  products on the prescription drug formulary at USC, UCLA, Cedars Sinai and other prominent Los

12  Angeles County medical facilities. PLAINTIFF also continued her efforts to support diversity and

13  inclusion at ABBVIE, serving as a mentor to other minority employees, helping organize the

14  company's Juneteenth event, and serving on the BBN Board.

15  ***Defendants Created a Hostile Work Environment by Treating PLAINTIFF as a Token Black***
16                                 ***Employee.***

17          21.      In 2020, ABBVIE started a diversity initiative in which it asked Black employees to

18  communicate on anonymous chat logs about their experiences as Black employees within the

19  predominantly-White workforce at ABBVIE. Shortly thereafter, ABBVIE hired a third-party vendor

20  to interview Black employees to "get their temperature" regarding their experiences working for

21  ABBVIE. The third-party vendor's emphasis was on collecting information from Black employees

22  for the purpose of educating/training White senior leaders.

23          22.      Black employees were strongly encouraged to participate, so PLAINTIFF agreed to

24  participate in an interview, thinking that she might be assisting ABBVIE to truly be a diverse and

25  inclusive workplace, as it proclaims to be in its marketing materials.

26          23.      After the interview, PLAINTIFF was strongly encouraged to participate in a breakout

27  video conference chat session during the workday with four to six Black employees and a

28  representative from the third-party vendor hired by ABBVIE to facilitate the discussion groups. The

                                          6

1   group members discussed their very personal experiences growing up Black in the United States and

2   being Black ABBVIE employees, causing PLAINTIFF and others to cry during and after the trauma-

3   inducing experience. The third-party vendor made no efforts to address the negative psychological

4   aftereffects experienced by the Black employees as a result of this project designed to educate White

5   leadership.

6        24.    PLAINTIFF was then summoned to a second workday videoconference meeting to

7   discuss her experiences as a Black woman and ABBVIE employee. However, this time a White male

8   Vice President was in the meeting, with no prior notice of his presence given to PLAINTIFF or her

9   Black colleagues. Again, this meeting was very emotional and trauma-inducing for PLAINTIFF and

10  the other Black ABBVIE employees in attendance. Neither ABBVIE nor the third-party vendor

11  provided counseling or other support for the Black employees who participated in this process.

12       25.    For over a year, PLAINTIFF heard nothing further about the Black employee

13  diversity initiative. She continued excelling in her work and bringing diversity and inclusion

14  initiatives to her District.

15       26.    Then, in Fall 2021, PLAINTIFF'S supervisor, ABBVIE West Region Senior Manager

16  DAVID KRIEG ("KRIEG") called her to explain that she was being "voluntold," (company-speak

17  meaning "expected to volunteer") to participate in an immersive lab with the third-party vendor in

18  Chicago in which all of senior leadership, including her bosses and the bosses for all of ABBVIE,

19  would be participating. KRIEG made it very clear to PLAINTIFF that her attendance at this meeting

20  was not optional.

21       27.    As directed, on or about November 2021, PLAINTIFF attended the in-person

22  immersive lab meeting in Chicago entitled "Force for Racial Justice." The meeting was designed for

23  people leaders – i.e., senior-level employees who have direct reports. All nine of the senior-level

24  people leaders in the meeting were White. ABBVIE had also added non-people leaders to create an

25  impression of diversification in the room. In addition to PLAINTIFF, there were two other

26  Immunology Account Executives, one Filipina/Hawaiian woman one half-White, half-Black

27  woman. Other diverse non-people leaders in attendance were a Marketing level two Iraqi employee,

28

7

a newly-hired Human Resources representative of Columbian national origin, and a Black secretary. None of the employees who identified as other than White had any direct reports and were not considered to be people leaders at ABBVIE.

28.     KRIEG informed PLAINTIFF that she and the other non-White employees had been summoned to the meeting solely to act as token diverse managerial employees, even though they did not truly qualify as members of senior leadership, because ABBVIE understood that it would be problematic to hold an immersive lab meeting regarding diversity with a Whites-only attendance log.

29.     PLAINTIFF was immediately uncomfortable when she walked into the room with ABBVIE's senior leadership, including KRIEG, who were all White, knowing that the only reason for her presence was her race/color. She was further uneasy because the senior leaders were positioned to make critical decisions about PLAINTIFF'S career. PLAINTIFF understood that her career depended on her "brand" – a concept well-known to ABBVIE employees – and that her presence at the meeting would reflect the "brand" that would be relied on by senior leaders. PLAINTIFF told KRIEG that she did not think she belonged at the meeting because it seemed to be for the White senior leadership, and KRIEG confirmed PLAINTIFF'S understanding that she was expected to act as a token Black employee, telling her that her presence was needed at the meeting to show diversity and representation.

30.     Already uncomfortable from the outset as an obvious outsider, PLAINTIFF became increasingly more uncomfortable as the meeting progressed. The immersive lab was extremely triggering and intrusive, from the topics discussed to the activities PLAINTIFF was required to participate in. At one point, attendees were separated into racial groups and PLAINTIFF was told, as the outsider token Black employee, to stand by the racial group she felt most comfortable with. At another point, PLAINTIFF was required to participate in a discussion among White senior leaders about negative stereotypes associated with Blacks, in which those White senior leaders described stereotypes that Black people are "lazy" and live in "ghettos." PLAINTIFF understood that the White senior leaders attributed these same stereotypes to her "brand."

31.     During her forced participation in the immersive lab, PLAINTIFF revealed that she

COMPLAINT FOR DAMAGES

had struggled at ABBVIE because others do not see her as a leader because of her race. She explained that the pressure of having to act as a representative for all Black employees was very difficult, particularly since ABBVIE'S corporate leadership and culture is not diverse. PLAINTIFF challenged ABBVIE's apparent practice of treating diversity and inclusion efforts as "checking boxes," explaining that hiring her and another half-Black employee who might present as racially ambiguous into a role that is not a true people leader role was a performative act and did not reflect any real commitment to diversity, inclusion and retention of Black employees, including by promoting them to real leadership ranks.

32.     As "homework" to prepare for the third day of the immersive lab, ABBVIE sent PLAINTIFF and other meeting attendees a 70-page document containing quotes from the 300 Black employees who, like PLAINTIFF, had participated in the videoconference diversity discussions with the third-party vendor the previous year. The document contained a vast amount of material describing the experiences of Black employees that was difficult to deal with, and PLAINTIFF'S attempts to process the information, in light of her own work experiences, was emotionally triggering.

33.     The 70-page document detailed "Listen & Learn Insight Theme Headlines" for the White senior leadership to learn from. Quotes from the Black employees were presented in quote bubbles, grouped six on a page, by topic, including *Overt Racism; Lack of Promotion; Lack of Equal Treatment, Recognition and Pay; Fear of Retaliation; Talking About Racism/Educating White People is Painful, Isolation; Lack of Ability to Be Authentic; Lack of Safety; Lack of Representation, Especially in Sr. Leadership*" among others. The quotes from the Black employees were startling in their specificity, egregiousness, and numerosity. They echoed PLAINTIFF'S own thoughts and negative experiences at ABBVIE as a Black employee, and forced her to confront the racial discrimination that permeated ABBVIE's work environment.

34.     Walking into the second day of the meeting, PLAINTIFF faced an almost exclusively White senior leadership focusing their attention solely on PLAINTIFF, as the token Black employee, to discuss the feedback from 300 Black ABBVIE employees.

COMPLAINT FOR DAMAGES

35.     When Plaintiff sat down at her desk, the room darkened and a video projected on a large screen showing a Black father telling his eight year old daughter how hard her life was going to be because she is Black. PLAINTIFF, who has two young Black daughters, could no longer contain her emotional response to the onslaught of racially-charged events of the past day.  She escaped to the hallway where her extreme emotional distress resulted in a panic attack and uncontrollable sobbing.  Unable to stop crying, PLAINTIFF went to her hotel room and contacted fellow members of ABBVIE'S BBN who confirmed that the substance of the immersive lab was also objectively offensive to them, as similarly situated Black employees.

36.     A while after she left the room, KRIEG left the meeting to check on PLAINTIFF's status, and she told him she wanted to go home.  PLAINTIFF'S disruptive exit from the session, without returning for the rest of the session, was obvious to the attendees present. PLAINTIFF spent the afternoon in her room experiencing a breakdown, until it was time for her flight home. PLAINTIFF cried during the entire flight home. She continued to suffer extreme emotional distress in the following two days, and could not return to work. Despite her obvious emotional upset, no one at ABBVIE followed up further with PLAINTIFF to see if she was okay, or to otherwise show any concern for her.

37.     PLAINTIFF subsequently learned from other attendees that the meeting conditions worsened for the minority employees present, who were directed to sit on chairs in the middle of the room and talk about their negative experiences for the purpose of educating the White leadership. These employees had a similar reaction to PLAINTIFF's from the traumatizing material, and similarly cried on their flights home.

### *Plaintiff Complained to Human Resources Regarding the Hostile Work Environment, Race Harassment and Bias, but Defendants Failed to Investigate or Protect Plaintiff.*

38.     Within a few days of the Chicago meeting, PLAINTIFF called ABBVIE Human Resources to complain about the traumatic experience and extreme exploitation she and the few other minority employees had been subjected to, from which she was still experiencing extreme emotional distress. She was told that she would need to speak to someone in ABBVIE's Global Diversity Department.

10

39.     A lawyer from ABBVIE Global Diversity, Jamelle Cunningham, contacted PLAINTIFF and PLAINTIFF again shared what had happened at the meeting as well as her experience as a Black ABBVIE employee. PLAINTIFF described how she was consistently forced to prove her value, was often the only minority employee in the room, and was repeatedly passed up for promotions or opportunities because she did not have the subjective and undefined qualities of a "true leader" that ABBVIE was "looking for."

40.     PLAINTIFF also recommended to Ms. Cunningham that if ABBVIE was going to force its minority employees to confront traumatic subject matter like it did at the immersive lab meeting, it should provide support systems to those employees, including time off work and a therapist to talk to.

41.     As part of her complaints to ABBVIE, PLAINTIFF indicated that she felt that her forced participation in the meeting had put her in an unfair position that could damage her career, as her emotional response to the subject matter would be perceived as diminishing her "brand."

42.     Months passed before PLAINTIFF heard back from Ms. Cunningham, who told PLAINTIFF that a couple of changes would be made to the immersive lab program, including removing the video featuring the Black father and changing the program's name to "Force for Inclusion." Ms. Cunningham did not follow up on Plaintiff's other issues, including her request for support systems or other protection to assist Black employees forced to act as pawns in ABBVIE's White leadership education program despite the adverse impact their participation could have on their careers.

***ABBVIE Retaliated Against Plaintiff After She Refused to Act as the Token Black Employee Whose Role is to Educate White Leaders About "the Black Experience."***

43.     Shortly after the immersive lab meeting, and despite knowing of PLAINTIFF's response to it, Krieg asked PLAINTIFF to get on a phone call with some other members of ABBVIE senior leadership who really wanted to understand "the Black experience." PLAINTIFF declined, saying that that ABBVIE had the 70-page document reviewed in Chicago and she did not feel comfortable speaking for "the Black experience."

44.     Immediately thereafter, KRIEG's attitude towards PLAINTIFF changed and he began

11

1   retaliating against her. Instead of giving PLAINTIFF credit for her objectively impressive work

2   accomplishments, such as securing ABBVIE's products on formularies at UCLA, USC, Cedars

3   Sinai, and other prominent Los Angeles County healthcare facilities, KRIEG rated PLAINTIFF

4   poorly on purely subjective grounds, assigning her a two out of a possible five rating for "partnering."

5   This type of negative performance feedback would ensure she could never be promoted to a

6   leadership position. When PLAINTIFF asked what she needed to do to improve, KRIEG had no

7   concrete suggestions, and raised his voice to bark, in an aggressive manner, "You should know that."

8          45.    During the same period, Marketing Director Derek Reider, who had also attended the

9   immersive program and had witnessed PLAINTIFF's reaction, similarly began retaliating against

10  Plaintiff. Although he had been friendly and respectful to PLAINTIFF prior to the meeting,

11  afterwards, he spoke to and about PLAINTIFF in a disrespectful and disparaging manner, including

12  repeatedly calling her "a shitshow" in front of other managers who made decisions about her career.

13  PLAINTIFF understood that Reider was tarnishing her "brand" as a result of her reaction to being

14  forced to participate in the Chicago meeting.

15              ***ABBVIE Refused to Allow Plaintiff to Attend Its Leadership Program.***

16         46.    PLAINTIFF learned about ABBVIE's "REACH" Program, a several-month

17  management training and coaching program for ABBVIE personnel interested in becoming people

18  leaders. Her mentee, a Latino man who had been with the company about 5-6 years compared to her

19  fifteen years, had been able to participate in the program. PLAINTIFF thought she could benefit

20  from the program as its purpose was to train "true leaders" according to ABBVIE'S subjective

21  standard.

22         47.    PLAINTIFF asked KRIEG if she could participate in the program. After consulting

23  with Bill Axelson, who had also attended the Chicago immersive program, KRIEG told her she could

24  not attend due to her group's strict standards about eligibility to attend the program, which were

25  based on points from subjective performance evaluations. When PLAINTIFF informed him that a

26  new extra class had been created for the purpose of training diverse candidates, KRIEG told her that

27  was not the way their group wanted to do it. Instead, KRIEG told PLAINTIFF she could not attend

28

                                    12

the leadership training program unless she met certain metrics based on performance evaluations. But the low rating KRIEG had given PLAINTIFF in her performance evaluation disqualified her from participating based on the metrics her group was using. The management team from PLAINTIFF'S group – which was known as an "old boy's club" – ultimately did not sign up anyone from their group to participate in the available class, and a White woman filled the diversity spot PLAINTIFF had hoped to fill.

48.     Adding insult to injury, White employees, including KRIEG, took credit and received accolades and monetary bonuses for the diversity and inclusion work PLAINTIFF had completed. KRIEG, not PLAINTIFF, was given the opportunity to speak at a national meeting about diversity and inclusion work PLAINTIFF had performed. When KRIEG boasted about what was clearly PLAINTIFF'S work, a White colleague noticed the injustice and asked PLAINTIFF if she was okay with him stealing her work. Later, KRIEG was given a diversity award based on the same work.

49.     Meanwhile, PLAINTIFF's contributions were ignored and diminished. Prior to the Chicago meeting, PLAINTIFF had received a national diversity and inclusion award, which normally would raise an employee's profile and career opportunities, as such awards typically reflected leadership skills. However, KRIEG minimized the usual effect of PLAINTIFF's award and gave credit to himself and other White employees for their lesser diversity work.

### Plaintiff Complained to Human Resources Regarding Pay Inequity.

50.     In 2021, PLAINTIFF complained to ABBVIE about her failure to be promoted and receive meaningful raises despite her excellent work performance and objective sales results. PLAINTIFF told ABBVIE Human Resources that she had a feeling she was very underpaid. PLAINTIFF also complained about the elimination of profit-sharing and after-the-fact changes to her commission and bonus opportunities, which diminished her annual pay. Human Resources said they reviewed her pay and gave her a slight increase, but she still earned tens of thousands less than her White colleagues. Human Resources also never investigated her complaints or told her the methodology which prompted her slight increase.

51.     Since PLAINTIFF complained about harassment and discrimination, she has received

COMPLAINT FOR DAMAGES

1  smaller pay increases and bonuses.

2  ***ABBVIE Denied Plaintiff a Lucrative Position on the Basis of a Prior Negative Experience with***
3  ***Another Black Employee.***

4        52.     Seeking to escape this hostile work environment, PLAINTIFF applied for other

5  positions within the Company. First, she applied for an internal role of Allergan Aesthetics District

6  Manager. Although  normally an internal candidate for a job would be interviewed by phone or in

7  person by Human Resources, and her current team would be reached out to and given an

8  opportunity to advocate for her. When PLAINTIFF learned that the role had been filled without

9  following those normal procedures, PLAINTIFF complained to KRIEG and Axelson about this

10  oversight, who appeared to agree that PLAINTIFF had not been treated as a typical internal

11  candidate, but said that it was too late and discouraged PLAINTIFF from "rocking the boat."

12        53.     PLAINTIFF next applied for another internal opening – a position in the Botox

13  product area of ABBVIE, which provided for potentially lucrative compensation opportunities.

14  Although PLAINTIFF did interview for the position, she did not get the job. KRIEG told

15  PLAINTIFF not to tell anyone but the reason she did not get the job was not only because she

16  allegedly did not have "leadership experience," but because that business unit had previously hired

17  a Black employee who did not work out so that hurt PLAINTIFF'S chances of being hired.

18

19  ***Plaintiff Worked Tirelessly to Launch a New Product Until Severe Stress Aggravated Her***
20  ***Medical Conditions, Necessitating a Leave of Absence.***

21        54.     In Spring 2022, PLAINTIFF worked tirelessly to launch a new product in her

22  region.

23        55.     Severe stress from the events described herein aggravated her medical conditions

24  requiring her to seek medical care and take a leave of absence on or about June 2022 for her own

25  serious medical condition, as protected by California employment law.

26        56.     KRIEG ignored PLAINTIFF'S contributions, telling her that she missed the entire

27  product launch. PLAINTIFF corrected KRIEG, reminding him that she had worked the launch

28  together with him, listing the multiple visits they went on together before her leave.

14

57.     PLAINTIFF returned to work and sought approval to attend a BBN event, which Krieg strongly discouraged, citing her recent medical leave. By contrast, KRIEG supported PLAINTIFF's White colleague's attendance at a national meeting as a point of pride, where the employee would favorably represent the team and display his readiness for a leadership role. Meanwhile, PLAINTIFF's presence on a national committee that affected far more employees went unrecognized, and did not receive team announcements or any recognition of her leadership skills.

### *Plaintiff Again Complained to Human Resources To No Avail.*

58.     On or about October 2022, PLAINTIFF called ABBVIE Human Resources to complain about the ongoing discrimination, harassment and retaliation, which was now due to her disability and having taken medical leave of absence, in addition to her race.

59.     ABBVIE again failed to investigate PLAINTIFF'S complaints, and instead told her to write a letter explaining "her issues."

### *AbbVie's Conduct Caused Plaintiff Severe Emotional Distress and Physical Illness Necessitating Medical Care, a Leave of Absence and Forcing Her Constructive Termination.*

60.     When a co-worker asked how PLAINTIFF was doing at a national meeting, PLAINTIFF broke down in tears, thinking about the trauma, harassment, discrimination and retaliation she had experienced, combined with the company's lack of effort to correct these problems. She sought medical attention and was placed on leave of absence.

61.     Facing post-traumatic stress disorder following the unlawful and intolerable working conditions ABBVIE and DOES knowingly and intentionally created and refused to correct, PLAINTIFF was incapable of going back to work.  PLAINTIFF was forced to resign and thereby ABBVIE and DOES constructively terminated her employment.

62.     As a consequence of DEFENDANTS' conduct, PLAINTIFF has had to employ attorneys to prosecute this action, and has therefore incurred costs and attorneys' fees necessary to pursue this action.

63.     As a result of DEFENDANTS' illegal actions, PLAINTIFF has suffered significant emotional distress, physical injury and damages.

15

**FIRST CAUSE OF ACTION**

**Discrimination Based on Race/National Origin/Ancestry**

**Violation of FEHA, Cal. Gov't Code Section 12940(a)**

**(Against DEFENDANTS)**

64.     PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

65.     Under the California Government Code, "it is unlawful employment practice…[f]or an employer, because of …race … national origin, ancestry, to discriminate against [any] person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

66.     The FEHA provides that "the opportunity to seek, obtain, and hold employment without discrimination because of … race…national origin, ancestry . . . is hereby recognized as and declared to be a civil right." Cal. Gov't Code § 12921(a).

67.     The purpose of the FEHA is to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of, *inter alia*, race, national origin and ancestry. The FEHA recognizes that the practice of denying employment opportunities and discriminating in terms of employment substantially and adversely affects the interest of employees, employers, and the public in general. Cal. Gov't Code § 12920.

68.     At all relevant times herein, PLAINTIFF was an "employee" covered by California Government Code section 12926(a), which, *inter alia*, prohibits an employer from terminating the employment of an employee on the basis of an employee's race, national origin, or ancestry. The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's race, national origin or ancestry, which "includes a perception that the person has any of those characteristics." Cal. Gov't Code § 12926(o).

69.     DEFENDANTS knew that PLAINTIFF identifies as Black and therefore is a member of protected classes within the meaning of the FEHA and is entitled to the FEHA's guarantees of full and equal access to employment. Cal. Gov't Code § 12940.

16

COMPLAINT FOR DAMAGES

70.     As alleged herein, PLAINTIFF's race, national origin, ancestry and/or other characteristic(s) protected by the FEHA were motivating factors in DEFENDANTS' decisions not to promote PLAINTIFF or give PLAINTIFF a raise commensurate with the work she performed, and/or to take other adverse job actions against PLAINTIFF.

71.     At all relevant times herein, ABBVIE, by and through its agents, knowingly discriminated against PLAINTIFF on the basis of PLAINTIFF's race, national origin, and/or ancestry by favoring White employees in the terms and conditions of their employment, including by promoting White employees, compensating White employees with higher salaries than PLAINTIFF, and by establishing different working conditions for PLAINTIFF than her White colleagues, as alleged herein and above.

72.     ABBVIE's conduct, as alleged herein, violated the FEHA, and ABBVIE committed unlawful employment practices, including, without limitation, by materially affecting the terms and conditions of PLAINTIFF's employment, in whole or in part on the basis of PLAINTIFF's race, national origin, and/or ancestry, and/or other protected characteristic(s) in violation of California Government Code section 12940(a).

73.     The doctrines of equitable tolling and continuing violations apply to PLAINTIFF'S claims of discrimination. *See Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001); *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88 (2008).

74.     As a proximate result of ABBVIE's willful, knowing, and intentional discrimination against PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses of earnings or earning capacity and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

75.     PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

76.     ABBVIE committed the acts herein despicably, maliciously, fraudulently, and

17

COMPLAINT FOR DAMAGES

1  oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive

2  amounting to malice, and in conscious disregard of PLAINTIFF'S rights.  PLAINTIFF is thus

3  entitled to punitive damages from ABBVIE in an amount according to proof.

**SECOND CAUSE OF ACTION**

**Harassment Based on Race/National Origin/Ancestry**

**Violation of FEHA, Cal. Gov't Code Section 12940(j)**

**(Against DEFENDANTS)**

8  77.    PLAINTIFF incorporates by reference and realleges as if fully stated herein each and

9  every allegation set forth above.

10  78.    The FEHA provides that it shall be unlawful for an employer or for any person to

11  harass an employee because of a person's race, national origin and/or ancestry. Cal. Gov't Code

12  § 12940(j)(1).

13  79.    As the California legislature has clarified, the purpose of the anti-harassment

14  provisions of the FEHA "is to provide all Californians with an equal opportunity to succeed in the

15  workplace and should be applied accordingly by the courts." Cal. Gov't Code § 12923(a).  As the

16  California legislature declared, "harassment creates a hostile, offensive, oppressive, or intimidating

17  work environment and deprives victims of their statutory right to work in a place free of

18  discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes

19  upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's

20  ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal

21  sense of well-being." *Id.*

22  80.    At all times herein mentioned, DEFENDANTS were subject to the FEHA, including

23  its prohibition against harassing any employee on the basis of an employee's race, national origin

24  and/or ancestry.

25  81.    As alleged above, during PLAINTIFF's employment with DEFENDANTS,

26  DEFENDANTS intentionally engaged in harassment on the basis of PLAINTIFF'S race, national

27  origin and/or ancestry.

28

18

COMPLAINT FOR DAMAGES

82.     A reasonable person subjected to the harassing conduct would find, as PLAINTIFF did, that the harassment so altered PLAINTIFF's working conditions as to be offensive and distressing, such that it affected PLAINTIFF's ability to do her job as usual and also undermined PLAINTIFF's sense of well being.

83.     The doctrines of equitable tolling and continuing violations apply to PLAINTIFF'S claim of harassment. *See Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001); *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88 (2008).

84.     As a proximate result of DEFENDANTS' willful, knowing, and intentional harassment against PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses of earnings or earning capacity and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

85.     PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

86.     DEFENDANTS committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFF'S rights.  PLAINTIFF is thus entitled to punitive damages from DEFENDANTS in an amount according to proof.

## THIRD CAUSE OF ACTION

### Discrimination on the Basis of Disability and/or Medical Condition

### Violation of FEHA, Cal.  Gov't Code § 12940(a)

### (Against DEFENDANTS)

87.     PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

88.     The FEHA provides that "the opportunity to seek, obtain, and hold employment without discrimination because of ... disabilities . . .  is hereby recognized as and declared to be a

19

civil right." Cal. Gov't Code § 12921(a).

89.   The FEHA makes it an unlawful employment practice for an employer to discriminate against an employee "in terms, conditions, or privileges of employment" on the basis of the employee's disability and/or medical condition. Cal. Gov't Code § 12940(a). Under California law, disability includes not only a current disability, but also being perceived or regarded by the employer as having or having had a condition that currently has no disabling effect but may become an impairment limiting the individual's ability to participate in major life activities in the future (including working). *See* Cal. Gov't Code § 12926(j); 2 Cal. Code. Regs. § 11065(d).

90.   As alleged herein, PLAINTIFF suffered from disabilities and medical conditions requiring medical care and leaves of absence.

91.   As alleged above, PLAINTIFF'S disability and/or medical condition were motivating factors in DEFENDANTS and KRIEG's actions taken against PLAINTIFF, including failing to acknowledge the work she had performed or approving her request to attend a national conference after coming back from medical leave.

92.   As a proximate result of DEFENDANTS' willful, knowing, and intentional discrimination against PLAINTIFF, PLAINTIFF has sustained and continue to sustain substantial losses of earnings and other employment benefits, and has suffered and continue to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

93.   PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

94.   DEFENDANTS committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF. PLAINTIFF is thus entitled to punitive damages from the AMERICAN and DOES in an amount according to proof.

## FOURTH CAUSE OF ACTION

**Harassment on the Basis of Disability and/or Medical Condition**

**Violation of FEHA, Cal. Gov't Code Section 12940(j)**

**(Against DEFENDANTS)**

95.     PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

96.     The FEHA provides that it shall be unlawful for an employer or for any person to harass an employee because of a person's disability and/or medical condition. *See* Cal. Gov't Code § 12940(j).

97.     As alleged herein, PLAINTIFF suffered from disabilities and medical conditions requiring medical care and a leave of absence.

98.     As alleged above, during PLAINTIFF'S employment with DEFENDANTS, KRIEG intentionally engaged in harassment, including unreasonably interfering with PLAINTIFF'S work performance and creating an intimidating, hostile, and offensive work environment, on the basis of PLAINTIFF'S disability, in violation of California law.  DEFENDANTS knew and/or should have known about the harassment in violation of the FEHA that was directed toward PLAINTIFF, including harassment undertaken by supervisory employee KRIEG, for which ABBVIE is strictly liable, and/or by employees whom DEFENDANTS know and/or should have known were engaging in such conduct in violation of the FEHA.

99.     A reasonable person subjected to the harassing conduct would find, as PLAINTIFF has, that the unwanted harassment so alters PLAINTIFF'S working conditions as to make it more difficult to do her job. *See* Cal. Gov't Code § 12923(a).

100.     As a proximate result of DEFENDANTS' harassment of PLAINTIFF, PLAINTIFF has sustained and continue to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to their damage in a sum according to proof.

COMPLAINT FOR DAMAGES

101.   PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

102.   DEFENDANTS have committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF. PLAINTIFF IS thus entitled to punitive damages from DEFENDANTS in an amount according to proof.

### FIFTH CAUSE OF ACTION

**Retaliation For Opposing Practices Forbidden by FEHA**

**Violation of FEHA, Cal. Gov't Code Section 12940(h)**

**(Against DEFENDANTS)**

103.   PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

104.   At all times herein mentioned, the FEHA was in full force and effect and was binding on DEFENDANTS. This statute requires ABBVIE and DOES to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under the FEHA, including complaining of discrimination or harassment on the basis of sex, pregnancy, physical disability and/or medical condition, among other things. *See* Cal. Gov't Code § 12940(h).

105.   As alleged herein, PLAINTIFF engaged in activity protected by the FEHA, including complaining about not being promoted or given a raise because of her race, national origin, and/or ancestry, not being  promoted and paid equitably compared to her similarly situated, and in some cases, less qualified, White peers, marginalization and discrimination by KRIEG and others, the toxic hostile work environment at ABBVIE, and refusing to act as a token Black employee educating White senior leaders about the "Black experience," as stated above.

106.   The ongoing decision not to consider PLAINTIFF for promotion, promote PLAINTIFF or give her a raise commensurate with her work was in retaliation for PLAINTIFF

22

1 engaging in protected activity, including her complaints described above.

2   107. The doctrines of equitable tolling and continuing violations apply to PLAINTIFF'S

3 claims of retaliation. *See Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798 (2001); *McDonald v. Antelope*

4 *Valley Community College Dist.*, 45 Cal.4th 88 (2008).

5   108. As a proximate result of ABBVIE's and DOES' willful, knowing, and intentional

6 retaliation against PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses

7 of earnings or earning capacity and other employment benefits, and has suffered and continues to

8 suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage

9 in a sum according to proof.

10   109. PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees.

11 Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover

12 reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

13   110. ABBVIE and DOES committed the acts herein despicably, maliciously, fraudulently,

14 and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil

15 motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF.  PLAINTIFF

16 is thus entitled to punitive damages from ABBVIE and DOES in an amount according to proof.

17

### SIXTH CAUSE OF ACTION

18

**Failure to Prevent, Investigate, and Remedy Discrimination, Harassment, or**

19

**Retaliation**

20

**Violation of FEHA, Cal. Gov't Code Section 12940(k)**

21

**(Against DEFENDANTS)**

22   111. PLAINTIFF incorporates by reference and realleges as if fully stated herein each and

23 every allegation set forth above.

24   112. California law requires employers to "take all reasonable steps necessary to prevent"

25 and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior

26 in the workplace. *See* Cal. Gov't Code §12940(k).  Pursuant to this statute, ABBVIE and DOES

27 were required to take all reasonable steps to prevent harassment, discrimination, and retaliation based

28

COMPLAINT FOR DAMAGES

on PLAINTIFF'S race, national origin and/or ancestry, and/or other protected characteristics.

113. During the course of PLAINTIFF's employment, ABBVIE failed to prevent KRIEG and others from engaging in intentional actions that resulted in PLAINTIFF being treated less favorably and subjected to a hostile work environment because of PLAINTIFF's protected statuses (*i.e.*, race, national origin and/or ancestry, disability, having taken a medical leave of absence and/or other protected characteristics). Although ABBVIE was aware of a number of actions and comments to and about PLAINTIFF that constituted harassment, discrimination, and retaliation, ABBVIE did not take immediate or corrective action to prevent further harassment, discrimination, and retaliation against PLAINTIFF.

114. As alleged herein and above, ABBVIE and DOES violated California law by failing to take all reasonable steps necessary to prevent the harassment, discrimination, and retaliation from occurring. *See* Cal. Gov't. Code § 12940(k).

115. As a proximate result of ABBVIE and DOES' willful, knowing, and intentional failure to prevent, investigate or remedy harassment, discrimination, and retaliation against PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses of earnings or earning capacity and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

116. PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

117. ABBVIE and DOES committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF. PLAINTIFF is thus entitled to punitive damages from ABBVIE and DOES in an amount according to proof.

## SEVENTH CAUSE OF ACTION

### Whistleblower Retaliation

**Violation of Cal. Lab. Code Section 1102.5**

**(Against DEFENDANTS)**

113.   PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

114.   At all relevant times, California Labor Code section 1102.5 was in effect and was binding on DEFENDANTS. California law prohibits DEFENDANTS from retaliating against any employee, including PLAINTIFF, for raising complaints of illegality. "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information... if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation...." Cal. Lab. Code § 1102.5(b).

115.   At all relevant times, an employer is responsible for the acts of its managers, officers, agents, and employees. *See* Cal. Lab. Code § 1104(b).

116.   As alleged herein, PLAINTIFF engaged in activity protected by complaining about DEFENDANTS' violation(s) of the FEHA and the California Labor Code. In response, DEFENDANTS retaliated against PLAINTIFF by taking adverse employment actions, including refusing to consider PLAINTIFF for promotion, promote PLAINTIFF or increase PLAINTIFF'S compensation commensurate with her job duties, as discussed above.

117.   As a proximate result of DEFENDANTS' willful, knowing, and intentional retaliation against PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses of earnings or earning capacity and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

118.   PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), PLAINTIFF is entitled to recover reasonable attorneys' fees in an amount according to proof.

119.   DEFENDANTS committed the acts herein despicably, maliciously, fraudulently, and

COMPLAINT FOR DAMAGES

oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF.  PLAINTIFF is thus entitled to punitive damages from DEFENDANTS in an amount according to proof.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against DEFENDANTS)

120.    PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

121.    A person intentionally inflicts emotional distress when he/she engages in extreme and outrageous conduct with either: (1) an intent to cause emotional distress; or (2) reckless disregard of the probability of causing emotional distress, and actually does cause severe emotional suffering. *See Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

122.    DEFENDANTS owed PLAINTIFF a duty of care not to cause PLAINTIFF emotional distress.

123.    As alleged herein and above, DEFENDANTS knowingly treated PLAINTIFF cruelly and illegally based on her race, national origin and/or ancestry, disability and/or taking a medical leave of absence and because she engaged in other protected activity, causing her severe emotional distress.

124.    DEFENDANTS caused PLAINTIFF severe and extreme emotional distress that exceeded the normal risks of the employment relationship, by harassing and discriminating against her based on her race, national origin and/or ancestry, disability and/or taking a medical leave of absence, including by forcing her to attend a session designed to exploit Black employees for the purpose of educating White senior leaders about race issues without any thought to the traumatizing psychological effects inflicted on the Black employees, and by conspiring against PLAINTIFF to deny her a promotion and pay raise, while giving promotions and raises to her White colleagues and gaslighting her as to the reasons she was not promoted.

125.    DEFENDANTS breached their duty to PLAINTIFF by way of their own conduct, as

COMPLAINT FOR DAMAGES

alleged herein and above.

126.   DEFENDANTS' improper treatment of PLAINTIFF constituted severe and outrageous misconduct and caused PLAINTIFF to suffer extreme emotional distress that exceeded the normal risks of the employment relationship.

127.   PLAINTIFF is informed and believes and thereon alleges that such acts of DEFENDANTS were intentional, extreme, and outrageous.  PLAINTIFF is further informed and believes, and thereon alleges, that such actions were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing PLAINTIFF serious emotional distress.

128.   As a proximate result of DEFENDANTS' extreme and outrageous conduct, PLAINTIFF has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

129.   As a proximate result of DEFENDANTS' extreme and outrageous conduct, PLAINTIFF was compelled to and did employ the services of medical personnel, and the like, to care for and treat her, and did incur, medical, professional and incidental expenses.

130.   DEFENDANTS committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of PLAINTIFF.  PLAINTIFF is thus entitled to punitive damages from DEFENDANTS in an amount according to proof.

## NINTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### (Against DEFENDANTS)

131.   PLAINTIFF incorporates by reference and realleges as if fully stated herein each and every allegation set forth above.

132.   DEFENDANTS owed PLAINTIFF a duty of care not to cause PLAINTIFF emotional distress.

133.   As alleged herein and above, DEFENDANTS treated PLAINTIFF with wanton and

27

1   reckless disregard of the probability of causing PLAINTIFF to suffer extreme emotional distress.

2   134.   DEFENDANTS breached their duty to PLAINTIFF by way of their own conduct, as
3   alleged herein and above.

4   135.   As alleged herein and above, DEFENDANTS knowingly mistreated PLAINTIFF
5   based on her race, national origin and/or ancestry, including by forcing her to attend a session
6   designed to exploit Black employees for the purpose of educating White senior leaders about race
7   issues without any thought to the traumatizing psychological effects inflicted on the Black
8   employees, and by conspiring against PLAINTIFF to deny her a promotion and pay raise, while
9   giving promotions and raises to her White colleagues and gaslighting her as to the reasons she was
10  not promoted.

11  136.   Such conduct was done in a careless or negligent manner, without consideration for
12  the effect of such conduct upon PLAINTIFF'S emotional well-being.

13  137.   DEFENDANTS knew, or should have known, that treating PLAINTIFF in the
14  manner alleged above, would devastate PLAINTIFF and cause PLAINTIFF extreme hardship.

15  138.   As a proximate result of DEFENDANTS' negligent conduct, PLAINTIFF has
16  suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and
17  anguish, all to her damage in a sum according to proof.

18  **TENTH CAUSE OF ACTION**

19  **Violation of California Equal Pay Act**

20  **Cal. Lab. Code § 1197.5(b)**

21  **(Against DEFENDANTS)**

22  139.   PLAINTIFF incorporates by reference and realleges as if fully stated herein each and
23  every allegation set forth above.

24  140.   At all relevant times, California Labor Code section 1197.5 was in effect and was
25  binding on ABBVIE and DOES.  This statute prohibits ABBVIE from paying any individual at a
26  lower rate than employees of a different race or ethnicity for substantially similar work, when viewed
27  as a composite of skill, effort, and responsibility, performed under similar working conditions.

28

COMPLAINT FOR DAMAGES

141.   ABBVIE and DOES violated California Labor Code section 1197.5 by failing to pay PLAINTIFF at the same rate as her White counterparts for substantially similar work, when viewed as a composite of skill, effort, and responsibility, performed under similar working conditions. ABBVIE and DOES knew this to be the case as it gave PLAINTIFF a slight increase after she complained to Human Resources, though PLAINTIFF still earned substantially less than her White colleagues.

142.   As a proximate result of ABBVIE and DOE'S violation of Labor Code section 1197.5, PLAINTIFF sustained substantial losses of earnings and employment benefits. PLAINTIFF is entitled to the balance of the wages, including interest, and an equal amount as liquidated damages. *See* Cal. Lab. Code § 1197.5(h).

143.   Labor Code section 1197.5(k)(1) prevents employers from, "in any manner discriminat[ing] or retaliat[ing] against, any employee by reason of any action taken by the employee to invoke or assist in any manner the enforcement of [Labor Code section 1197.5]. As alleged herein, ABBVIE and DOES discriminated and retaliated against PLAINTIFF for actions she took to attain pay equity in accordance with Labor Code section 1197.5.

144.   Labor Code section 1197.5(k)(2) enables employees, such as PLAINTIFF, who have "been discharged, discriminated or retaliated against, in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in" Labor Code section 1197.5, to recover, among other things, "reimbursement for lost wages and work benefits caused by the acts of the employer, including interest thereon, as well as appropriate equitable relief."

145.   PLAINTIFF has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Labor Code section 1197.5(h), PLAINTIFF is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (Against DEFENDANTS)

146.   PLAINTIFF incorporates by reference and realleges as if fully stated herein each and

COMPLAINT FOR DAMAGES

1    every allegation set forth above.

2         147.   Under California law, it is unlawful for an employer to terminate an employee in

3    violation of a fundamental public policy of the United States of America and the State of California.

4         148.   The laws and public policy of the State of California as declared by, *inter alia*, the

5    California Constitution, Art.1, Section 8, the FEHA, and the Labor Code prohibit an employer from

6    terminating an employee on the basis of the employee's race/national origin/ancestry, disability

7    and/or because the employee engaged in protected activity.

8         149.   As alleged above, PLAINTIFF's race/national origin/ancestry, disability and/or

9    protected activity were substantial motivating factors in her constructive discharge from ABBVIE

10   and DOES.

11        150.   As a direct and proximate result of ABBVIE and DOE's violation of PLAINTIFF'S

12   rights under California law, PLAINTIFF has sustained and continues to sustain substantial losses of

13   earnings and employment benefits, and has suffered and continues to suffer humiliation, emotional

14   distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

15        151.   ABBVIE and DOES committed the acts herein despicably, maliciously,

16   fraudulently, and oppressively, with the wrongful intention of injuring PLAINTIFF, from an

17   improper and evil motive amounting to malice, and in conscious disregard of the rights of

18   PLAINTIFF.  PLAINTIFF is thus entitled to punitive damages from ABBVIE and DOES in an

19   amount according to proof.

20                          **.PRAYER FOR RELIEF**

21        WHEREFORE, PLAINTIFF MIRIAM ROBINSON, respectfully prays for judgment against

22   DEFENDANTS, and each of them, as follows:

23        1.     For economic damages for loss of past and future earnings, as well as loss of earning

24   capacity, just promotions, advancement, and employment benefits, in excess of this Court's

25   jurisdictional limits and according to proof;

26        2.     For general damages for pain and suffering, mental and emotional trauma and

27   anguish, for the loss of enjoyment of life, according to proof;

28

COMPLAINT FOR DAMAGES

3.     For economic damages including resultant past and future medical care; job search costs, other economic damages, including incidental fees and/or other costs, and/or economic losses according to proof;

4.     For compensatory damages, as against each named Defendant, according to proof;

5.     For all wages (including base salary, bonuses, and stock) due pursuant to California Labor Code § 1197.5(h) in an amount to be ascertained at trial;

6.     For statutory and civil penalties arising from the violations of the California Labor Code alleged herein;

7.     For liquidated damages pursuant to California Labor Code § 1197.5(h);

8.     For punitive damages, as against each named Defendant, for the causes of action alleged herein, according to proof;

9.     For attorneys' fees, as provided by statute, according to proof;

10.     For all available injunctive, equitable and other relief, including remedies authorized by California Government Code section 12965(c);

11.     For "affirmative relief" as defined in California Government Code section 12926(a);

12.     For interest on the unpaid wages at 10% per annum pursuant to California Labor Code section 1197.5(h) , California Civil Code Sections 3287, 3288, and/or any other applicable provision providing for pre-judgment interest;

13.     For preliminary and permanent injunctive relief enjoining ABBVIE and DOES from violating California Labor Code § 1197.5, *et seq.*, by paying their non-White employees lower wages than they pay their White counterparts for substantially similar work; and from engaging in unfair and unlawful business practices complained of herein in violation of California Business and Professions Code § 17200, *et seq.*; and

14.     For such further relief that the Court may deem just and proper.

COMPLAINT FOR DAMAGES

1

2   DATED:  February 24, 2023                    GUNN COBLE LLPGUNN COBLE LLP

3

4                                                           By: _____

5                                                                Beth Gunn
                                                                 Catherine J. Coble
6
                                                           Attorneys for Plaintiff
7                                                          MIRIAM ROBINSON

8

9                                 **DEMAND FOR JURY TRIAL**

10          PLAINTIFF Miriam Robinson hereby demands a jury trial with respect to all issues triable

11  of right by jury.  The amount demanded exceeds $25,000.  *See* Cal. Govt. Code § 72055.

12

13

14  DATED:  February 24, 2023                    GUNN COBLE LLPGUNN COBLE LLP

15

16                                                          By: _____

17                                                               Beth Gunn
                                                                 Catherine J. Coble
18
                                                           Attorneys for Plaintiff
19                                                         MIRIAM ROBINSON

20

21

22

23

24

25

26

27

28
                                          32
                              COMPLAINT FOR DAMAGES